No. 13-2234

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

DAN RYAN BUILDERS, INC., a Maryland Corporation

Plaintiff – Appellant

v.

CRYSTAL RIDGE DEVELOPMENT, INC., a West Virginia Corporation; LANG BROTHERS, INC. a West Virginia Corporation; ROBERT S. LANG, an individual

Defendants – Appellees

v.

HORNOR BROTHERS ENGINEERS

Third Party Defendant – Appellee

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT CLARKSBURG**

**APPELLANT'S BRIEF**

Avrum Levicoff, Esquire
W.Va. I.D. #: 4549
Julie A. Brennan, Esquire
W.Va. I.D. #: 11225
Levicoff, Silko & Deemer, P.C.
650 Smithfield St., Ste. 1900
Pittsburgh, PA 15222
412-434-5200

*Counsel for Appellant,*
*Dan Ryan Builders, Inc.*

{L0562690.1 }

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. Proc. 26.1 and Local Rule 26.1,

Dan Ryan Builders, Inc. who is the Appellant, makes the following disclosure:

1.    Is party a publicly held corporation or other publicly held entity?  No

2.    Does party have any parent corporations?  Yes.  DRB Enterprises, Inc. owns 100% of Dan Ryan Builders, Inc.

3.    Is 10% or more of the stock of the party owned by a publicly held corporation or other publicly held entity?  No

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  No

5.    Is party a trade association?  No

6.    Does this case arise out of a bankruptcy proceeding?  No


Date:  January 29, 2014                    ___/s/ Avrum Levicoff_____
                                           Avrum Levicoff, Esquire


{L0562690.1 }                    i

# <u>TABLE OF CONTENTS</u>

Corporate Disclosure Statement ................................................................. i

Table of Contents ...................................................................................... ii

Table of Authorities ................................................................................. iii

Jurisdictional Statement ............................................................................1

Statement of Issues...................................................................................1

Statement of Case ....................................................................................2

Summary of Argument .............................................................................17

Standard of Review..................................................................................18

Argument.................................................................................................19

I.     The District Court Erred In Entering Judgment In Favor Of The Defendants On The Negligence Claim For Property Damage Due To The Failure Of The Fill Slope. ..................................................................19

    A.    The District Court's Ruling On Plaintiff's Negligence Claim Violates The Party Presentation Principle. ...............................................19

    B.    Plaintiff's Claim For Damages For Property Damage Caused By The Fill Slope Failure Is Cognizable In Tort.......................................23

II.    The District Court Erred In Failing To Find Lang Brothers Liable For Breach of Contract And Award Damages For The Property Damage Resulting From The Failure Of The Fill Slope. ................................................46

Conclusion ..............................................................................................52

Request for Oral Argument.......................................................................53

Certificate of Compliance with typeface and length limitations .............................54

Certificate of Service ...............................................................................55

# TABLE OF AUTHORITIES

## CASES

Aikens v. Debow, 208 W.Va. 486, 541 S.E.2d 576 (2000)....................... 33, 40, 44

Arizona v. California, 530 U.S. 392, 120 S.Ct. 2304 (2000) .................................21

Backwater Props., LLC v. Range Res.-Appalachia, LLC, No. 1:10CV103, 2011 U.S. Dist. LEXIS 48496 (N.D. W.Va. May 5, 2011).........................................44

Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 Fed.Appx. 556 (4th Cir. 2008) ..........................................................................................................49

Bartlett v. Recapping, Inc., 207 Va. 789, 153 S.E.2d 193 (1967) ...........................37

Bd. of Ed. v. Van Buren & Firestone, Architects, Inc., 165 W.Va. 140, 267 S.E.2d 440 (1980).......................................................................................... 40, 41, 46

Bilmar Ltd. P'ship v. Prima Mktg., LLC, No. 2:13-14391, 2013 U.S. Dist. LEXIS 168515 (N.D. W.Va. Nov. 27, 2013)....................................................................28

Blaine v. Chesapeake & Ohio R.R., 9 W.Va. 252 (1876) ......................................24

Blake Constr. Co. v. Alley, 233 Va. 31, 353 S.E.2d 724 (1987)..................... 37, 38

Bocre Leasing Corp. v. Gen. Motors Corp., 84 N.Y.2d 685, 645 N.E.2d 1195 (1995).........................................................................................................33

Bryant v. City of Fairmont, No. 12-1391, 2013 W.Va. LEXIS 887 (W.Va. Aug. 30, 2013) ..........................................................................................................26

Bunn v. Oldendorff Carriers GMBH & Co. KG, 723 F.3d 454 (4th Cir. 2013) .....21

Carcaise v. Cemex, Inc., 200 Fed.Appx. 116 (3d Cir. 2006) ..................................45

Cavcon Inc. v. Endress + Hauser, Inc., 557 F.Supp.2d 706 (S.D. W.Va. 2008).....43

Cherrington v. Erie Ins. Prop. & Cas. Co., 745 S.E.2d 508 (W.Va. 2013) ...... 35, 36

City of Richmond v. Madison Mgmt. Group, Inc., 918 F.2d 438 (4th Cir. 1990) ..37

Clodfelter v. Sudan, 720 F.3d 199 (4th Cir. 2013) ...................................................21

Coastal Conduit & Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282 (Tex. App. 2000) ...........................................................33

Cochran v. Appalachian Power Co., 162 W.Va. 86, 246 S.E.2d 624 (1978)... 43, 44

Colton v. Foulkes, 259 Wis. 142, 47 N.W.2d 901 (1951) .......................................30

Commerzanstalt v. Telewide Sys., Inc., 880 F.2d 642 (2d Cir. 1989) ...................50

Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957) ........................................ 48, 49

Daniels v. Brown, No. 13-1648, 2013 U.S. App. LEXIS 24863 (4th Cir. Dec. 16, 2013) .......................................................................................19

E. Steel Constructors, Inc. v. City of Salem, 209 W.Va. 392, 549 S.E.2d 266 (2001) ........................................................................ 25, 26

EEOC v. Gen. Elec. Co., 532 F.2d 359 (4th Cir. 1976) .........................................51

Ehresmann v. Muth, 2008 SD 103, 757 N.W.2d 402 (2008) .................................30

Eriline Co. S.A. v. Johnson, 440 F.3d 648 (4th Cir. 2006) ....................................21

Ewing Constr. Co. v. Amerisure Ins. Co., No. 12-0661 (Texas Supreme Court Slip Opinion filed Jan. 17, 2014) ............................................................35

Frye v. Dan Ryan Builders, Inc., No. 3:10-cv-39, 2011 U.S. Dist. LEXIS 23206 (N.D. W.Va. Mar. 8, 2011)...............................................................28

Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568 (W.Va. 2013) ................................................................ 30, 42, 44

Gen. Foods Corp. v. United States, 448 F.Supp. 111 (D. Md. 1978).....................33

Goldstein v. Elk Lighting, Inc., No. 3:12-CV-168, 2013 U.S. Dist. LEXIS 30569 (M.D. Pa. Mar. 4, 2013)......................................................... 42, 44

Greenlaw v. United States, 554 U.S. 237, 128 S.Ct. 2559 (2008) .................. 20, 22

Heavener v. Pender, 11 Q.B.D. 503 (1883)............................................................24

{L0562690.1 }

iv

Hersh v. E-T Enters., Ltd. P'ship, No. 12-0106, 2013 W.Va. LEXIS 1271 (W.Va. Nov. 12, 2013) ................................................................26

Hoschar v. Appalachian Power Co., No. 12-2482, 2014 U.S. App. LEXIS 257 (4th Cir. Jan. 7, 2014)................................................... 25, 26

Howell v. Ayers, 129 Ga.App. 899, 202 S.E.2d 189 (1973) ...................................30

Knapp Shoes, Inc. v. Sylvania Shoe Mfg Co., 15 F.3d 1222 (1st Cir. 1994)..........19

Leadfree Enters., Inc. v. U.S. Steel Corp., 711 F.2d 805 (7th Cir. 1983) ..............33

Lempke Plumbing & Heating v. Hayutin, 148 Colo. 334, 366 P.2d 673 (1961) ....30

Lockhart v. Airco Heating & Cooling, Inc., 211 W.Va. 609, 567 S.E.2d 619 (2002) ................................................................................ passim

Louisiana v. M/V Testbank, 752 F.2d 1019 (5th Cir. 1985) ...................................33

Marine Navigation Sulphur Carriers, Inc. v. Lone Star Indus., 638 F.2d 700 (4th Cir. 1981) ................................................................33

McClure v. Elmo Greer & Sons of Ky, LLC, 369 F.Supp.2d 832 (N.D. W.Va. 2005) ................................................................42

Moore v. Pavex, Inc., 356 Pa.Super. 50, 514 A.2d 137 (1986)..............................33

Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56 (4th Cir. 1993) ...................................19

N. Power & Eng'g Corp. v. Caterpillar Tractor Co., 623 P.2d 324 (Alaska 1981)38, 39

Nat'l Steel Erection, Inc. v. J.A. Jones Constr. Co., 899 F.Supp. 268 (N.D. W.Va. 1995) ................................................................42

Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 N.W.2d 124 (Iowa 1984) ................................................................33

Neely v. Belk, Inc., 222 W.Va. 560, 668 S.E.2d 189 (2008) .................................26

Pinette v. McLaughlin, No. CV030524313S, 2004 Conn. Super. LEXIS 1442 (June 1, 2004) ................................................................45

Plasterers' Local Union No. 96 Pension Plan v. Pepper, 663 F.2d 210 (4th Cir. 2011) ...................................................................................................19

Purofied Down Prods. Corp. v. Travelers Fire Ins. Co., 278 F.2d 439 (2d Cir. 1960) .......................................................................................................51

R.G. Steel Wheeling, LLC v. Health Plan of the Upper Ohio Valley Inc., No. 5:13CV7, 2013 U.S. Dist. LEXIS 131138 (N.D. W.Va. Sept. 13, 2013) ..........44

Reed v. Dupuis, 2007 Pa.Super. 68, 980 A.2d 861 (2007)......................................45

Ringo v. Southland Gaming of the U.S. V.I., Inc., No. ST-10-CV-116, 2010 V.I. LEXIS 62 (V.I. Super. Ct. Sept. 22, 2010)...........................................................45

Robertson v. LeMaster, 171 W.Va. 607, 301 S.E.2d 563 (1983)......... 23, 24, 25, 40

Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134 (1927) ........33

S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co., 353 F.3d 367 (4th Cir. 2003) ......................................................................................................19

Sam Finley, Inc. v. Barnes, 156 Ga.App. 802, 275 S.E.2d 380 (1980)...................30

SEC v. Rapp, 304 F.2d 786 (2d Cir. 1962)....................................................... 50, 51

Secure US, Inc. v. Idearc Media Corp., No. 1:08CV190, 2008 U.S. Dist. LEXIS 104112 (N.D. W.Va. Dec. 24, 2008) ...................................................................43

Sewell v. Gregory, 179 W.Va. 585, 371 S.E.2d 82 (1988) ............................. passim

Silk v. Flat Top Constr., Inc., 192 W.Va. 522, 453 S.E.2d 356 (1994)........... passim

St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778 (4th Cir. 1995) .............30

Star Furniture Co. v. Pulaski Furniture Co., 171 W.Va. 79, 297 S.E.2d 854 (1982) ............................................................................................................... passim

Star v. Rosenthal, 884 F.Supp.2d 319 (E.D. Pa. 2012) ..........................................44

Steel of W. Va., Inc. v. AMI G.E., LLC, No. 3:09-0005, 2009 U.S. Dist. LEXIS 48773 (S.D. W.Va. June 10, 2009)......................................................................43

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992 (2002)......................49

Talkington v. Atria Reclamelucifers Fabrieken BV, 152 F.3d 254 (4th Cir. 1998)31

Thacker v. Tyree, 171 W.Va. 110, 297 S.E.2d 885 (1982) ......................................32

United States v. Burke, 504 U.S. 229, 112 S.Ct. 1867 (1992) ......................... 20, 21

United States v. Ind. Bonding & Sur. Co., 625 F.2d 26 (5th Cir. 1980) ................20

United States v. Sioux Nation, 448 U.S. 371, 100 S.Ct. 2716 (1980)....................21

United Textile Workers v. Lear Siegler Seating Corp., 825 S.W.2d 83 (Tenn. Ct. App. 1990) ...........................................................................................................33

Vaz v. Sweet Ventures, Inc., No. UNN-L-004619-10, 2011 N.J.Super. Unpub. LEXIS 3189 (July 14, 2011)................................................................................45

Walker v. Doe, 210 W.Va. 490, 558 S.E.2d 290 (2001) ........................................26

Wince v. Easterbrooke Cellular Corp., 681 F.Supp.2d 688 (N.D. W.Va. 2010) ....47

**OTHER AUTHORITIES**

2 F. Harper & F. James, The Law of Torts § 18.2 (1956) .......................................24

3 Moore's Federal Practice, 984-5.........................................................................51

57A AM. JUR. 2D Negligence § 111 ........................................................................27

8 C.J.S. Torts § 4 (1997) .......................................................................................29

Geoffrey C. Hazard, Jr. et al., Civil Procedure § 1.2 (6th ed. 2011) ......................21

Larry L. Teply & Ralph U. Whitten, Civil Procedure 9 (5th ed. 2013) .................21

Prosser and Keeton on The Law of Torts § 92 (W. Page Keeton ed.) (5th ed. 1984) ..............................................................................................................................34

Restatement (Second) of Torts § 323 (1965)..........................................................30

## <u>R</u><small>ULES</small>

Fed. R. Civ. P. 15(b)(2) ........................................................................50

Fed. R. Civ. P. 8(a)(2) .........................................................................48

Fed. R. Civ. P. 8(d) .............................................................................49

## <u>JURISDICTIONAL STATEMENT</u>

The district court had subject matter jurisdiction in this diversity case pursuant to 28 U.S.C. § 1332(a)(i).  This appeal is from a final judgment entered on September 24, 2013.  This Court has jurisdiction under 28 U.S.C. § 1291.  The notice of appeal therefrom was filed on October 4, 2013.

## <u>STATEMENT OF ISSUES</u>

I.      Whether the district court deviated from the "party presentation principle" in *sua sponte* considering and concluding that the plaintiff's claim for damages for property damage due to the failure of a fill slope does not support a legally cognizable tort claim, but rather that the so-called "gist" of that claim sounds only in contract?

II.      Whether the district court erred in holding that West Virginia law does not permit a recovery in tort for negligence for physical damage to real property caused by the failure of a fill slope constructed by the defendants?

III.      Whether the district court erred in inexplicably failing to find Lang Brothers, Inc. liable for breach of contract and award damages for the property damage resulting from the failure of the fill slope?

## STATEMENT OF CASE

### INTRODUCTION

This is a diversity case governed by West Virginia substantive law. Plaintiff asserts claims for money damages for physical injury to real property purchased by the plaintiff from the defendants which was caused by the catastrophic failure of a fill slope constructed by the defendants, as well as claims for various breaches of contract arising out of the development, construction and eventual sale of "Crystal Ridge", a residential planned community located in Bridgeport, West Virginia. The physical property damage resulting from the slope failure was the predominant harm involved in the case. The slope failed because the defendants failed to exercise ordinary skill, care and workmanship in the construction of the fill slope. The ensuing damage not only destroyed the slope, it damaged several residential lots in the subdivision. Plaintiff incurred very substantial costs in reconstructing the slope and remediating the lots. A bench trial was convened, and concluded on August 28, 2012. The evidence focused predominantly on the fill slope failure. One year later, the district court issued a Memorandum including findings of fact and conclusions of law. Despite finding that poor and unworkmanlike practices employed by Lang Brothers in the design and construction of the slope was the cause of the slope failure, the district court rejected plaintiff's negligence claim for

those damages, *sua sponte* ruling that recovery in tort is barred or foreclosed by virtue of the so-called "gist of the action" doctrine. Despite having concluded that the claim for damages for the slope failure sounded in contract, the district court neglected to award damages against Lang Brothers for breach of contract, even though the district court's fact findings mandated liability on that theory. Thus, even though the district court plainly concluded that Lang Brothers' "poor construction practices were the sole proximate cause of the slope failure," JA2374 n.44, and despite indisputable evidence of substantial damages proximately resulting therefrom, the district court failed to award any damages to the plaintiff for the slope failure, offering no particular explanation for that conundrum.[1] Plaintiff appeals from these aspects of the judgment entered by the district court. The district court found that Lang Brothers had breached the obligations of a separate contract for the purchase of lots by failing to complete the construction of certain roads in Crystal Ridge, and awarded damages therefor. Plaintiff does not appeal from that part of the judgment.

---

[1] The district court's decision does not specifically address the claims against two of the defendants, Robert Lang and Crystal Ridge Development, Inc. There is no explanation for that omission, either.

## STATEMENT OF FACTS

Plaintiff, Dan Ryan Builders, Inc., is a residential home builder based in Maryland. Lang Brothers, Inc. ("Lang Brothers") was an excavation and road building contractor, which maintained its primary location along West Virginia Route 50 near Bridgeport, West Virginia.[2]  For many years, Lang Brothers was predominately engaged in large road building projects, primarily for the West Virginia Department of Transportation. According to its principal, Robert Lang, Lang Brothers had extensive experience in earthwork, including the construction of fill embankments.

Beginning in 2004, the defendants undertook the development, construction and ultimate sale of "Crystal Ridge," a planned residential community located near Bridgeport, West Virginia. The tract of land of some 70 acres upon which Crystal Ridge is located has been owned for many years by members of the Lang family. It was conveyed to Crystal Ridge Development, Inc. for development. The property lies contiguous to and just across Route 50 from Lang Brothers' business location. The property is very steeply sloped. The terrain slopes upward from Route 50, to an elevation several hundred feet above the road surface. According to extensive evidence presented at the trial, the geology of the area above bedrock

---

[2] Lang Brothers is now defunct, but maintains corporate existence.

is dominated by "colluvium", a soil that is especially prone to slippage and movement. The area presents particularly difficult engineering and construction issues with respect to the earthwork (cut and fill) involved in recontouring the natural slope. JA810-812.

Mr. Lang engaged the engineering assistance of third-party defendant, Hornor Brothers Engineers, *inter alia*, for the preparation and submittal of engineering and infrastructure plans for approval by the City of Bridgeport, and the necessary applications for permits from the West Virginia Departments of Health and Environmental Protection.

During 2005, Mr. Lang initiated negotiations with plaintiff, which resulted in a detailed "Lot Purchase Agreement" ("LPA") dated June 30, 2005. Under the terms of the LPA the defendants agreed to develop the infrastructure and complete lots, and plaintiff agreed to purchase groups of completed lots in sequence, at a price of $30,000 per lot. JA2295-2300.

Development work began in 2005; by early 2006 it became apparent that the steeply sloped contour of several of the lots, including lots 2-7, provided an insufficient area to accommodate a reasonably sloped driveway, a house and a usable yard. These lots were located near the entrance to the community, fronted on the main roadway within the development, and at the rear sloped very steeply

downward toward Route 50. On the other side of the main roadway, other lots sloped too steeply upward at the rear. Substantial regrading was necessary, which necessitated the creation of an enormous fill slope behind lots 2-7.[3] Hornor Brothers provided drawings which both reflected an acceptable finished contour, and provided a basis to calculate the amount of earth that needed to be moved. The drawings are referred to in the evidence at trial variously as either "mass grading cross sections" or "volume computation" drawings. These drawings reflected the placement of typical houses on typical lots, and reflected a reasonable slope for a driveway area. They depicted the need for a much gentler contour than the existing natural slope. There was a dispute between the parties initially as to whether the fill slope necessary to recontour lots 2-7 was the responsibility of the defendants or plaintiff.[4] Ultimately, in April of 2006 plaintiff and Lang Brothers entered into the so-called "Contract With Independent Contractor", under which Lang Brothers expressly undertook to perform the work necessary to recontour the affected lots, for an additional price of $100,000. JA2303-2306, 450-458.

---

[3] Conversely, a significant cut was required into the upward slope behind lots on the opposite side of the roadway. JA454-455.

[4] Under the terms of the parties' LPA, the defendants had the obligation to perform "mass grading" on the site. Conversely, Dan Ryan Builders had the responsibility for "lot grading". Ultimately, that issue became moot by virtue of the "Contract With Independent Contractor", under which Lang Brothers expressly agreed to perform the work for an additional consideration.

The "Contract With Independent Contractor" is a very simple document. According to the testimony at trial, it was drafted by Lang Brothers and provided to plaintiff for execution. JA456-458. Under "Services to be Performed by Contractor" the document simply states:

> Lang Brothers, Inc. will provide the cut and fill necessary to deliver finished buildable lots as described in the mass grading cross sections provided by Hornor Brothers Engineers to Dan Ryan Builders and Lang Brothers Inc. (sic).
>
> ***
>
> Lang Brothers will be responsible for all costs incurred for the excavation, hauling and filling, as well as quality control measures necessary to complete the aforementioned lots.

JA2465. The document contains no explicit construction standards or specifications; no express contractual warranty; and no special requirements for the design or construction. Under Paragraph 3, entitled "Time for Performance", the document states "Contractor will complete the performance of these services on or before May 1, 2006." In Paragraph 17, entitled "Governing Law" the document states "[t]his agreement will be governed by and construed in accordance with the laws of the state (sic) of West Virginia." Id. No other provisions in the document are relevant.

Work under the "Contract With Independent Contractor" was completed, including the fill slope on lots 2-7, and plaintiff paid Lang Brothers $100,000.

Thereafter, on August 4, 2006, the first closing and conveyance of lots occurred, which included lots 2-7, as well as lots 20-24. Dan Ryan Builders commenced to market contracts for the sale of those lots, with houses to be constructed thereon. By March of 2007, lot 7 had been prospectively sold to a purchaser, and the house located on that lot was near completion. During an inspection by the buyer of lot 7, it was discovered that the house was exhibiting cracks in the basement slab and foundation walls. There was also a "tension crack" in the fill soil just behind the house. Plaintiff contacted an engineering firm to analyze lot 7. That firm viewed the problem as involving the quality and compaction of the fill immediately beneath the foundation footings, and recommended extending helical support piers below the foundation into the underlying bedrock. That analysis did not reveal the much more pervasive problem with the fill slope. JA2307-2310.

However, in December of 2007, unmistakable evidence suddenly emerged of an impending, dramatic, catastrophic failure of the entire fill slope on lots 2-7. Ultimately, a massive landslide occurred beginning at the top of the fill slope and extending downward into and beyond Route 50. The slide included all of the fill and with it a portion of the natural terrain.

Plaintiff engaged Pennsylvania Soil & Rock ("PS&R") to conduct a thorough geotechnical analysis. PS&R determined that the native, steeply sloped

colluvium soil was marginally stable, and highly prone to slippage. The natural slope was then surcharged with the addition of very steeply sloped fill, which was poorly constructed, inadequately compacted, and had no drainage facilities. Water was, therefore, permitted to infiltrate the fill, which carried additional weight. The combined load overtaxed the marginal resistance of the natural soils in the existing slope. As a result, a "failure plane" developed deep within the native soil, essentially between the natural colluvium and bedrock, and initiated a massive landslide. In its most critical areas, the ensuing landslide was within the natural soil beneath the fill, "actually at the interface between the natural soil and bedrock." JA822-824, 2314-2315, 2371-2372.

Expert testimony presented at trial was overwhelming that in light of the character and geology of the area, the construction of a safe, stable fill embankment required a carefully conceived engineering plan, and appropriate construction techniques. The testimony demonstrated that a slope no steeper than 2 to 1 would be acceptable in any such fill embankment; and that parameter was very important in this particular situation. Further, expert testimony presented at trial established that good and workmanlike construction practices required several precautions: a "keyway" tying the foot of the fill slope to natural soil; benching (a technique of periodically excavating horizontally into the natural slope); very

thorough (100% proctor) compaction of the fill; appropriate drainage facilities. JA702-703, 836, 2374. The evidence was overwhelming, and the district court found that Lang Brothers constructed the fill slope without any engineering and none of these precautions:

> [i]n constructing the fill slope, [Lang] did little more than cut fill from Lots 19 through 25 and place it on Lots 1 through 7. It failed to construct a keyway, strip the natural soil, implement a drainage system, bench individual lifts, or appropriately compact the fill.

JA2370. The district court described Lang Brothers' construction practices as "shoddy" and "poor", and concluded that the "poor construction practices were the sole proximate cause of the slope failure on Lots 2 through 7." JA2374. According to the uncontested testimony at trial, Lang Brothers constructed the slope in such a way as to leave it in "danger of imminent failure." JA741.

Plaintiff reconstructed the slope, and remediated the lots entirely at its own expense.[5] Reconstruction of the slope, which was engineered and monitored by Pennsylvania Soil & Rock, required the removal of the fill and a substantial portion of the damaged native soils that had been displaced by the landslide. In addition, plaintiff was required to contract for the stabilizing of the few homes that

---

[5] In fact, during May, 2007 prior to the landslide, the defendants became financially unable to complete the development of the subdivision. The LPA was amended, essentially to provide for plaintiff to immediately buy out the entirety of defendants' interest. JA498-502.

had been started on the affected lots.   JA747-750, 911.   Plaintiff presented

evidence at trial that the reconstruction of the slope and remediation of lots 2-7

resulted in an expenditure of $1,772,104.91.   JA2858.   Defendants presented no

damages evidence to the contrary.

## PROCEDURAL HISTORY

The plaintiff instituted this action by the filing of a Complaint on December

8, 2009.   On June 4, 2010, the plaintiff filed an Amended Complaint,[6] asserting

multiple claims in breach of contract and tort for a variety of damages, most

notably the physical property damage caused by the above described failure of the

fill slope.

The defendants answered the Amended Complaint denying liability, and

asserting thirty-six affirmative defenses.[7]   However, the Answer contained no

---

[6] The amendment was precipitated by defendants' motion to dismiss.   The amendment deleted one Count in which plaintiff had asserted a claim for indemnification against the defendants with respect to liability, if any, that might arise from a multi-faceted tort action for damages against Dan Ryan Builders in the Circuit Court of Harrison County, West Virginia.  That action had been brought by Crystal Ridge homeowners for property damages they allegedly sustained by virtue of the same massive fill slope failure for which the plaintiff seeks damages in this case.  By virtue of the amendment deleting that cause of action in this case, the plaintiff has since impleaded Lang Brothers as a third party defendant in the West Virginia state court case.
[7] The defendants joined Hornor Brothers Engineers as a third-party defendant, alleging that if they were liable to the plaintiff, Hornor was liable over for contribution or indemnity based on its alleged negligence in providing engineering

assertion that the claim for damages caused by the slope failure was not legally well founded in tort; nor alluded to the "gist of the action" doctrine. JA58. In fact, the defendants never raised any contention at any point in any manner that the damages resulting from the slope failure were not recoverable in tort.[8]

On August 3, 2012 the parties submitted the required Joint Pretrial Memorandum. The "Contract With Independent Contractor" was listed as an exhibit therein by <u>both</u> plaintiff and defendants. JA282, 284. Defendants also raised as a "contested issue of fact" whether they were "liable to [plaintiff] for breach of contract in relation to either 'Contract With Independent Contractor'?" JA305. The plaintiff submitted, *inter alia*, a brief statement of the essential elements of the claim for negligence, relying upon <u>Sewell v. Gregory</u>, 179 W.Va. 585, 371 S.E.2d 82 (1988), as follows: "the [defendants] owed legal duties to [plaintiff] from four separate and distinct contractual undertakings." JA293-294. In their statement of the elements of defenses, Lang Brothers asserted that they were "not negligent", and they raised "comparative negligence of DRB" as a defense. JA296. The defendants asserted no challenge to the legal sufficiency of

---

services.

[8] Defendants moved for summary judgment prior to trial. Therein, they challenged certain items of damages, but they advanced no contention that the plaintiff's tort claim for damages for the slope failure was not supported by applicable law. JA145, 149.

the negligence claim. They made no reference to the "gist of the action" doctrine, nor any other legal principle akin thereto. To the contrary, their "Brief Summary of Material Facts and Theories of Liability or Defense" is largely devoted to the contention that if the defendants were liable to the plaintiff, Hornor Brothers was liable over to defendants for its negligence in providing engineering services. JA299-301. Nothing in the Joint Pretrial Memorandum remotely suggests an argument that the damages for the slope failure were not recoverable on a tort theory, and/or were relegated solely to contract.

A pretrial conference was held on August 13, 2012, during which counsel for the parties expansively described the issues in controversy. Defendants' counsel informed the district court that Lang Brothers' obligation to erect the fill slope actually arose under the Contract With Independent Contractor. JA380. Nothing said by defendants' counsel intimated that plaintiff's tort claim for damages for the slope failure was ill founded under West Virginia law, either because the "gist of the action", or on any other basis. JA324. Paradoxically, in light of the district court's ultimate decision to eschew plaintiff's tort claim, at the pretrial conference the district court acknowledged that there was indisputably "a massive failure of the slope," and that "[w]e're here to find out who's at fault … for that, because somebody has to be, right. We can all agree on that. One or

more." JA389-390. Consonant with their portion of the Joint Pretrial Memorandum, defendants' counsel's presentation at the pretrial conference was focusing the fault on Hornor Brothers. JA390-394. No argument was otherwise made by defendants' counsel before, during or after trial to the effect that plaintiff's claim for damages for the massive slope failure did not properly sound in tort. Consonant with everything they presented before the trial, defendants' post-trial submissions focused entirely on the proximate cause of the fill slope failure, the comparative negligence of plaintiff, and alleged concurrent negligence of Hornor Brothers. In summary, an argument that plaintiff's claim for damages for the slope failure does not properly sound in tort was never presented by the defendants in any manner.

By contrast, at trial, plaintiff presented a wealth of evidence supporting both tort and contract theories of recovery for the damages caused by the slope failure. The "Contract With Independent Contractor" was introduced into evidence without objection, as was a wealth of testimony about the circumstances which necessitated the separate, specific contract requiring Lang Brothers to build the fill slope behind lots 2 through 7; the expectations of the plaintiff and Lang Brothers as to how that work would be performed; and the facts about how the slope was actually constructed. JA450-458, 2370-2374. No objection was interposed to any of that

evidence.   For their part, similar to counsel's remarks during the pretrial conference, during trial the defendants sought to show that their construction of the slope was performed under the 'Contract With Independent Contractor'', rather than the original LPA, and that the slope failed because Horner Brothers was negligent.   However, the defendants did not suggest during trial that the "Contract With Independent Contractor" was not properly part of the case.

The thrust of the trial addressed the construction of the fill slope, and its catastrophic failure.   To a much more limited extent, plaintiff introduced evidence relating to several alleged breaches by the defendants of several of the developer's obligations under the LPA.   These involved an admitted failure to complete certain improvements relating to roadways and curbing, a failure to construct the storm water system according to design, an alleged failure to clear an "avigation easement" over the development, and the delivery of the development without title to the property upon which the entryway was situate.   Evidence of damages resulting from these breaches was introduced, but the damages were a fraction of the cost of reconstructing the slope and remediating the damaged lots.

### THE DISTRICT COURT'S MEMORANDUM OPINION AND ORDER

The trial was concluded on August 28, 2012.   On September 24, 2013, the district court entered a Memorandum Opinion and Order containing detailed

findings of fact and conclusions of law, accompanied by an Order setting forth instructions for the entry of judgment.[9]  The district court found that Lang Brothers had breached the LPA by failing to complete certain roadways and curbing within the subdivision, and entered judgment in favor of the plaintiff as to that breach of contract.  The district court found in favor of defendants on the other claims for breach of the LPA.  None of those rulings are at issue in this appeal.

Although never presented by the defendants in any manner, the district court proceeded to consider as a legal matter whether the plaintiff's claim for damages resulting from the slope failure was cognizable in tort.  Interjecting a "gist of the action" method of analysis, *sua sponte*,[10] the district court concluded that the claim sounded only in contract not tort.  Therefore, the court directed the entry of judgment in favor of the defendants on the tort claim.  The district court found that under the Contract With Independent Contractor, the defendants were obligated "to provide the fill necessary to deliver finished buildable lots, perform compaction testing, and bear responsibility for 'quality control measures' for the fill …."

---

[9] Contemporaneously, a separate Judgment Order was entered in accordance with the Order.

[10] The district court acknowledged to some extent that the issue may not have been properly raised, commenting "[t]he gist of the action doctrine is applicable to this case even though the parties did not brief the issue, since the Court is obligated to look beyond the face of the pleadings to determine the true nature of the dispute." JA2360 n.37.

JA2375.  The district court found the contract to be "valid and enforceable as a matter of law."  JA2369 n.43.  "[A]fter careful evaluation of the evidence of record, the Court conclude[d] that [defendants'] poor construction practices were the sole proximate cause of the slope failure on Lots 2 through 7."  JA2374 n.44. Despite having elaborately characterized the claim for damages for the slope failure as one arising solely in contract, thus, having interposed the "gist of the action" doctrine as a bar to the plaintiff's tort claim, without explanation, the district court neglected to award damages resulting from the slope failure on a breach of contract theory.  Plaintiff appeals the failure of the district court to find liability of Lang Brothers, and award damages for the property damage caused by the slope failure, in <u>both</u> <u>tort</u> <u>and</u> <u>contract</u>.

## SUMMARY OF ARGUMENT

Even though the district court's findings of fact included all of the essential elements necessary to support plaintiff's tort claim for negligence for damages caused by the failure of the fill slope, the court *sua sponte* raised and determined that the claim for those damages is cognizable only in contract.  That ruling ignores that the issue had been waived, and it transgresses the fundamental "party presentation principle."  The district court's analysis of whether the circumstances support a recovery of damages for the fill slope in tort, rather than contract, is

superficial and the conclusion is erroneous.  The West Virginia cases make clear that where damages resulting from a failure to exercise due care by a construction contractor include foreseeable physical harm to real property, as was the case here, the claim sounds in tort for negligence, even though there may also be a cause of action for breach of contract.  The district court should not have applied a "gist of the action" analysis, not only because it was not presented by the defendants, but also because that rubric is inapplicable to a claim for physical injury to real property, which, as stated, sounds in tort.  On that basis, the district court's ruling in defendants' favor on the negligence claim is in error.  Further, despite having elaborately concluded that the claim for damages for the slope failure sounded in contract, the district court inexplicably failed to find Lang Brothers liable for those damages on a breach of contract theory.  This Court must reverse the judgment, and should enter judgment in favor of plaintiff and against Lang Brothers in both tort and breach of contract for the damages proximately caused by the catastrophic slope failure totaling $1,772,104.91.

## **STANDARD OF REVIEW**

This Court reviews "a judgment resulting from a bench trial under a mixed standard of review – factual findings may be reversed only if clearly erroneous, while conclusions of law are examined de novo."  Daniels v. Brown, No. 13-1648,

2013 U.S. App. LEXIS 24863, at *3 (4th Cir. Dec. 16, 2013) (*quoting* <u>Plasterers'</u>

<u>Local Union No. 96 Pension Plan v. Pepper</u>, 663 F.2d 210, 215 (4th Cir. 2011)).

The district court's conclusion that plaintiff's negligence claim for damages caused

by the fill slope failure does not support a recovery in tort is clearly a conclusion of

law and must be examined de novo.  Since the district court made no explanation

of the failure to award damages for the slope failure on a breach of contract theory,

it is difficult to characterize that omission; but in any event that omission should be

reviewed de novo.

<u>**ARGUMENT**</u>

**I.**
<u>**THE DISTRICT COURT ERRED IN ENTERING JUDGMENT IN FAVOR**
**OF THE DEFENDANTS ON THE NEGLIGENCE CLAIM FOR**
**PROPERTY DAMAGE DUE TO THE FAILURE OF THE FILL SLOPE.**</u>

**A.** <u>**THE DISTRICT COURT'S RULING ON PLAINTIFF'S NEGLIGENCE CLAIM**
**VIOLATES THE PARTY PRESENTATION PRINCIPLE.**</u>

Having failed to advance any argument in any form below that the claim for

damages for the slope failure does not sound in tort, the defendants waived the

issue.  *See* <u>Mylan Labs., Inc. v. Akzo, N.V.</u>, 2 F.3d 56 (4th Cir. 1993).[11]

---

[11] *See also* <u>S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.</u>, 353 F.3d 367
(4th Cir. 2003) (defendant waived two-year contractual limitation by failing to
raise the defense in a responsive pleading or by conduct); <u>Knapp Shoes, Inc. v.</u>
<u>Sylvania Shoe Mfg Co.</u>, 15 F.3d 1222 (1st Cir. 1994) (limitation of remedies
defense waived because not asserted in answer, resurrected by clear notice prior to
trial, or actually litigated in the course of the trial); <u>United States v. Ind. Bonding</u>

Perhaps more fundamentally, by even considering the issue, the district court departed from the party presentation principle.  Recently, in <u>Greenlaw v. United States</u>, 554 U.S. 237, 128 S.Ct. 2559 (2008), Justice Ginsburg explained that the party presentation principle is one of the hallmarks of our adversarial system:

> In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.  … [A]s a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief."  As cogently explained:
>
>> "[Courts] do not, or should not, sally forth each day looking for wrongs to right.  We wait for cases to come to us, and when they do we normally decide only questions presented by the parties.  Counsel almost always know a great deal more about their cases than we do …."

<u>Id</u>. at 243-4 (citations omitted).[12]  Concurring in <u>United States v. Burke</u>, 504 U.S. 229, 112 S.Ct. 1867 (1992), Justice Scalia explained that the principle

---

& Sur. Co., 625 F.2d 26 (5th Cir. 1980) (statute of limitations defense waived because never properly raised before the trial court).

[12] The principle of party presentation and the corollary principle of party prosecution are part of the fabric of our system of justice; they define the relative roles of the parties and the court in the adversary system.  "In civil disputes it is usually up to the parties, *not the court*, to initiate and prosecute litigation, investigate the pertinent facts, and present proof and legal argument to the tribunal.  The court's function is generally limited to adjudicating the issues raised by the

"distinguishes our adversarial system of justice from the inquisitorial one."  Id. at

246.  This Court, like every other court, adheres to the proposition that absent

special circumstances, a district court should not *sua sponte* consider matters not

raised by the parties.  *See* Clodfelter v. Sudan, 720 F.3d 199 (4th Cir. 2013);

Eriline Co. S.A. v. Johnson, 440 F.3d 648 (4th Cir. 2006).[13]  The *sua sponte*

consideration of an issue not presented by the parties is only appropriate where the

proceedings "implicate important judicial and public concerns not present in the

circumstances of ordinary civil litigation," Clodfelter, 720 F.3d at 209 (*quoting*

Eriline, 440 F.3d at 656), or where an issue is perceived to "implicate important

institutional interests of the court …."  Eriline, 440 F.3d at 655.  Recently, in Bunn

v. Oldendorff Carriers GMBH & Co. KG, 723 F.3d 454 (4th Cir. 2013), in

---

parties on the proof they have presented and applying appropriate procedural
sanctions on motion of a party."  Geoffrey C. Hazard, Jr. et al., Civil Procedure
§1.2 (6th ed. 2011) (emphasis added).  Significantly, as relates to the instant case,
"[t]he ultimate control over what is submitted for decision should rest with the
parties rather than the court."  Id.; *see also* Larry L. Teply & Ralph U. Whitten,
Civil Procedure 9 (5th ed. 2013) (explaining the adversary system and party
presentation).

[13] Even in the face of a recognized special circumstance, trial courts must exercise
restraint in addressing issues not presented by the parties.  *See* Arizona v.
California, 530 U.S. 392, 412, 120 S.Ct. 2304, 2318 (2000) ("[T]rial courts must
be cautious about raising [an issue] *sua sponte*, thereby eroding the principle of
party presentation so basic to our system of adjudication." (*quoting* United States
v. Sioux Nation, 448 U.S. 371, 432, 100 S.Ct. 2716 (1980) (Rehnquist, J.,
dissenting))).  In any event, there is plainly no special circumstance implicated
here.

responding to issues raised by the dissenting opinion, the majority observed that courts are limited to consideration of theories of defense actually presented by the defendant, citing the pronouncement in <u>Greenlaw</u>, *supra*, regarding the party presentation principle. Instantly, the district court plainly reached beyond the arguments presented by the defendants, and decided the issue of whether the claim for damages for the slope failure was cognizable in tort, even though that issue had never been presented in the case, despite the plain absence of any of the special circumstances that might justify that sort of activism. While acknowledging that the issue had not been "briefed by the parties," the district court rationalized the consideration of the issue on the basis of an asserted "obligation to look beyond the face of the pleadings and determine the true nature of the dispute." JA2360 n.37. The district court did considerably more than look beyond the pleadings; the issue had never been raised in any manner prior to judgment.[14] In this instance the district court sallied forth impermissibly and decided questions not "presented by the parties." *See* <u>Greenlaw</u>, *supra*.

---

[14] At a minimum, if the district court were intent on addressing issues never raised in the case, it was incumbent for the district court to at least notify the parties, and invite briefs and/or argument on the issue. As it was, the trial ended in August, 2012, but it was not until the district court issued its Memorandum in September of 2013 that the parties were made aware that the propriety of a tort claim for damages for the slope failure had crept into the case. At that point, judgment had been entered.

## B. PLAINTIFF'S CLAIM FOR DAMAGES FOR PROPERTY DAMAGE CAUSED BY THE FILL SLOPE FAILURE IS COGNIZABLE IN TORT.

Perhaps owing to having considered an issue never raised in the case without either notifying the parties, inviting briefs or entertaining argument, the district court's analysis of whether the fill slope failure supported a recovery in tort, rather than contract, was thoroughly mistaken. The district court ignored the indicia that the West Virginia Supreme Court of Appeals (and most other courts) has looked to in characterizing claims that are cognizable in tort, to-wit, whether the conduct of the defendant foreseeably resulted in physical harm to person or property, and instead viewed as talismanic the sole circumstance that the work that caused the damage was undertaken pursuant to a contract.

The analysis of whether the circumstances here sound in tort must begin with a proper understanding of the broad principles expressed by the West Virginia Supreme Court of Appeals in two cases, Robertson v. LeMaster, 171 W.Va. 607, 301 S.E.2d 563 (1983), and Sewell v. Gregory, 179 W.Va. 585, 371 S.E.2d 82 (1988); and the parochial application of those principles in a unique factual setting in Lockhart v. Airco Heating & Cooling, Inc., 211 W.Va. 609, 567 S.E.2d 619 (2002).[15] In Robertson and Sewell, the West Virginia Court enunciated the

---

[15] The district court's misanalysis underscores that one of the salutary benefits of the party presentation principle is that a court's analysis is likely to be enhanced

guiding principles that illuminate the circumstances under which a common law duty of due care arises, the breach of which is cognizable in an action in tort. The Robertson Court observed that the fundamental broad policy that has long guided the development of tort law "that all persons are required to use reasonable care to prevent others from being injured as a result of their conduct," Robertson, 171 W.Va. at 610, 301 S.E.2d at 566 (*citing* Heavener v. Pender, 11 Q.B.D. 503 (1883)), has a counterpart in the law of West Virginia, *viz.* the principle that: "The liability to make reparation for an injury, by negligence, is founded upon an original moral duty, enjoined upon every person, so to conduct himself … as not to injure another." Id. at 610-611, 301 S.E.2d at 567 (*quoting* Blaine v. Chesapeake & Ohio R.R., 9 W.Va. 252 (1876)). The Court explained that in ascertaining whether a tort duty of due care exists, the key inquiry is whether the conduct creates a foreseeable risk of harm. Citing the seminal Harper and James treatise on the law of torts,[16] the Court pointed out that the "foreseeability that harm might result has become a primary factor in determining whether a duty exists." Id. at 611, 301 S.E.2d at 567. The Robertson Court thus framed a broad principle of law as follows:

---

when the parties have an opportunity to present briefs and argument on the issues.
[16] 2 F. Harper & F. James, The Law of Torts §18.2 (1956).

> One who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm.

Syl. Pt. 2, Id.[17]

Applying these same principles in Sewell, the Court expressly recognized a cause of action in tort for negligence against a construction contractor, on the basis of allegations that the house built by the defendant suffered flood damage during heavy rains "because of how and where the house was constructed."  Sewell v. Gregory, 179 W.Va. at 587, 371 S.E.2d at 84.  At the threshold, Sewell mandates rejection of the district court's apparent premise that only contract liability, rather than tort liability, may attach simply because the work which caused the harm was undertaken pursuant to the terms of a contract.[18]  In several Syllabus Points, the Sewell Court set out the rules by which to determine whether recovery may be had

_____

[17] As this Court has explained, as a constitutional matter, the West Virginia Supreme Court of Appeals "articulates new points of law through its syllabus." Hoschar v. Appalachian Power Co., No. 12-2482, 2014 U.S. App. LEXIS 257 n.5 (4th Cir. Jan. 7, 2014).

[18] What is so paradoxical about the district court's apparent view on this, as reflected in its conclusions of law supporting the judgment, is that the district court seemingly had no difficulty prior to trial with the concept that a contractual undertaking can give rise to a broader duty of care.  Indeed, discussing the West Virginia Court's decision in Eastern Steel Constructors, Inc. v. City of Salem, 209 W.Va. 392, 549 S.E.2d 266 (2001), as it related to defendants' third-party claim against Hornor Brothers, the district court specifically commented that "the duty of care is not limited to what is specifically specified in a contract but is further defined by the rules of professional conduct …."  JA328-329, 349.

{L0562690.1 }                        25

in tort for negligence.[19]  In Syllabus Point 2, the Court pointed out that in a tort case "liability attaches to a wrongdoer, not because of a breach of contractual relationship, but because of a breach of duty which results in an injury to others." Again utilizing the foreseeability of physical harm as the polestar, in Syllabus Point 3, the Court pronounced a definitive rule that the "ultimate test" of the existence of a duty to exercise care, the breach of which is cognizable in tort must be "found in the foreseeability that harm may result if it is not exercised.  The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?"  Syl. Pt. 3, Id.  In Syllabus Point 4, the Court further broadly recognized that "[a] builder is under a common law duty to exercise care and skill in the construction of a building …." Syl. Pt .4, Id.[20]  Plainly, the points of law set

_____

[19] Again, the Syllabus contains the broad principles of law adopted by the Court. See Walker v. Doe, 210 W.Va. 490, 558 S.E.2d 290 (2001).

[20] The principles announced in Sewell have proven to be an enduring test for the existence of a legal duty cognizable in tort.  See Syl. Pt. 3, Hersh v. E-T Enters., Ltd. P'ship, No. 12-0106, 2013 W.Va. LEXIS 1271 (W.Va. Nov. 12, 2013); Bryant v. City of Fairmont, No. 12-1391, 2013 W.Va. LEXIS 887 (W.Va. Aug. 30, 2013); Syl. Pt. 4, Neely v. Belk, Inc., 222 W.Va. 560, 668 S.E.2d 189 (2008); Syl. Pt. 4, E. Steel Constructors, Inc. v. City of Salem, supra.; Hoshar v. Appalachian Power Co., supra.  However, the district court summarily dismissed Sewell v. Gregory in a footnote, on the basis that the tort liability of a contractor recognized by the West Virginia Court in that case runs only in favor of parties with whom the contractor has no direct contractual relationship.  JA2376 n.45.  Nothing in Syllabus Points 3 or 4 of Sewell supports that limitation.  Sewell is perhaps the

out in <u>Sewell</u> are fully applicable to the construction of the fill slope, and its

subsequent failure.  Under <u>Sewell</u>, plaintiff was clearly entitled to recover in tort

for negligence.  These principles, of course, are not peculiar to West Virginia; they

mirror the holdings of courts generally.  57A AM. JUR. 2D <u>Negligence</u> § 111 states

these rules as follows:

> Generally, there is implied in every contract for work or
> services a duty to perform it skillfully, carefully, diligently, and
> in a workmanlike manner, and a negligent failure to observe
> any of these conditions is a tort, as well as a breach of contract.
> Thus, a person who contracts to make repairs can be held liable
> for his or her negligence in doing the work.  One who contracts
> in a specialized professional capacity to provide the design for a
> particular structure may be held liable for the foreseeable
> consequences of a failure to exercise reasonable care in the
> preparation of the design.  In such cases, the contract is mere
> inducement creating the state of things which furnishes the
> occasion of the tort.  In other words, the contract creates the
> relation out of which grows the duty to use care.

(internal citations omitted).

Thus, in West Virginia, as elsewhere, where a contractor undertakes a

contract to construct a fill slope, and does so negligently, the resulting damage is

recoverable in tort for negligence.  Not surprisingly, based upon <u>Sewell</u>, the same

district court has recognized the availability of a cause of action in negligence for

---

most salient West Virginia case on the existence of a duty of care which will
support a recovery in tort for negligence.  It should not have been casually
disregarded.

property damage resulting from the negligent performance of services called for under a contract.  *See* Bilmar Ltd. P'ship v. Prima Mktg., LLC, No. 2:13-14391, 2013 U.S. Dist. LEXIS 168515 (N.D. W.Va. Nov. 27, 2013); Frye v. Dan Ryan Builders, Inc., No. 3:10-cv-39, 2011 U.S. Dist. LEXIS 23206 (N.D. W.Va. Mar. 8, 2011).

Lockhart v. Airco Heating & Cooling, Inc., does not suggest otherwise.  In Lockhart, the Court again utilized Sewell's "ultimate test" of foreseeability in considering whether a plaintiff personal representative could recover damages in tort for negligence against a heating contractor on the basis that the decedent, who suffered from a pre-existing pulmonary condition, had died from exposure to cold drafts in the house during the installation of a heat pump.  The Court considered whether the circumstances gave rise to a duty, the breach of which is cognizable in tort for negligence.  The Lockhart Court declined to find a basis to hold the contractor liable for negligence, but solely because the Court found the resulting harm not reasonably foreseeable.  The Court concluded that no ordinary contractor "could have anticipated that [the homeowner] would die if he were exposed to cold air while the heating system was being installed."  Lockhart, 211 W.Va. at 613, 567 S.E.2d at 623.  The Court then considered the plaintiff's argument that the contractor was under a "special duty", because it had agreed to "take necessary

precautions" to protect the decedent's health.  Id. at 614, 567 S.E.2d at 624.  Citing 8 C.J.S. Torts § 4 (1997), the Lockhart Court acknowledged that tort liability may arise out of an undertaking in a contract, provided the claim possesses all of the "essential elements of tort."    Id.   The Court rejected plaintiff's suggestion, essentially holding that if no duty exists under traditional tort principles, any duty arising solely by virtue of unique provisions in a contract still does not give rise to liability in tort for negligence.

While inaptly eschewing Sewell, the district court relied very heavily on Lockhart in its enthusiasm to apply its "Gist of The Action" analysis.  JA2358-2360.  Unfortunately, the district court utterly misunderstood, and misapplied that case.  At the threshold, Lockhart is not a "gist of the action" case.  The question before the Lockhart Court was not whether the claim sounded more properly in tort or in contract; rather, as stated, the issue was solely whether the unusual facts of that case gave rise to liability for negligence for wrongful death.   Next, the Lockhart Court ultimately held that no tort duty existed, not because the claim was contractual in character, but solely because the resulting harm was not a reasonably foreseeable consequence of the defendants' alleged conduct.  In its enthusiasm to apply a "gist of the action" analysis in this case, the district court vastly over extended the holding in Lockhart.  Given the unusual factual situation, Lockhart is

of very limited usefulness in determining whether a tort claim is appropriate in other factual scenarios.[21]

The district court completely overlooked that the negligence claim here is premised upon the common law duty of care owed by a contractor as recognized in Sewell, and the indisputably foreseeable harm that would result if Lang Brothers' work on the fill slope was negligently performed;[22] rather than from some "special

---

[21] It is telling that Lockhart has been cited only once by the West Virginia Court, and then in an equally unique context in Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568 (W.Va. 2013). See St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995) (concluding that failure of state courts to cite one of its own decisions suggests an intention not to expand applicability of that holding).

[22] The common law duty of due care owed by contractors implied by the Sewell Court has been widely recognized in the law of torts. Indeed, a specific section of the Restatement (Second) of Torts is founded upon an undertaking by a defendant, gratuitously or for consideration, that subjects the defendant to liability "for physical harm resulting from his failure to exercise reasonable care to perform his undertaking…." Restatement (Second) of Torts § 323 (1965). Abundant cases have applied the rule of liability to a defendant who performs construction services pursuant to a contract or agreement. See Colton v. Foulkes, 259 Wis. 142, 146, 47 N.W.2d 901, 903 (1951) ("Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract."); Sam Finley, Inc. v. Barnes, 156 Ga.App. 802, 803, 275 S.E.2d 380, 382 (1980) ("There is a duty implied in every construction contract 'to perform it skilfully, carefully, diligently, and in a workmanlike manner.'" (quoting Howell v. Ayers, 129 Ga.App. 899, 900, 202 S.E.2d 189 (1973))); Lempke Plumbing & Heating v. Hayutin, 148 Colo. 334, 342, 366 P.2d 673, 677 (1961) ("In the law of negligence, liability attaches to the wrongdoer because of his breach of duty in performing his work negligently, which results in injury to others."); Ehresmann v. Muth, 2008 SD 103, 757 N.W.2d 402 (2008)

duty" imposed by the terms of the "Contract With Independent Contractor" within the contemplation of <u>Lockhart</u>.[23]  Concomitantly, the gravamen of the breach was the failure to construct the fill slope in a good and workmanlike manner, and to employ proper construction practices, thereby leaving the slope in danger of "imminent failure."  In its enthusiasm to apply the so-called "gist of the action" rubric, the district court thoroughly ignored the basic teaching of <u>Robertson</u> and <u>Sewell</u>, the seminal West Virginia cases on the existence of tort duty, and misapplied <u>Lockhart</u>.  Consequently, despite finding as a fact "that [Lang Brothers'] poor construction practices were the sole proximate cause of the slope failure on Lots 2 through 7," JA2374 n.44, the district court never considered the key duty issue framed by these cases, -- whether physical harm to property was a foreseeable result of the defendants' misconduct.  Nor did the district court comprehend that if such harm was reasonably foreseeable, the circumstances would clearly implicate a breach of the implied <u>tort</u> duty of care on the part of the

---

(describing the duty of care to construct in a reasonably good and workmanlike manner to create a claim of negligent construction and breach of implied warranty); <u>Sewell</u>, *supra*.  Even if it were not clear enough on this point, the Court should readily predict that the West Virginia Court would readily adopt a similar rule.  *See* <u>Talkington v. Atria Reclamelucifers Fabrieken BV</u>, 152 F.3d 254 (4th Cir. 1998).

[23] Indeed, the contract requires nothing more than for Lang Brothers to construct the fill slope, and assume responsibility for "quality control."  It contains no unique or special requirements.

contractor, as recognized in <u>Sewell</u>.  Indeed, the district court's assertion that "DRB had wholly failed to identify any positive legal duty imposed by law upon which its negligence claim could rest," JA2375, thoroughly conflicts with <u>Sewell</u>'s holding that there is a positive legal duty to act in such a way as to avoid foreseeable physical harm to person or property upon which a cause of action for negligence always rests.  The district court instead misconstrued the circumstances as implicating a breach of "the implied warranty that a person undertaking particular work will exercise the degree of skill equal to the undertaking…." JA2374.  The district court viewed the duty breached as solely a "duty arising in <u>contract</u>," rather than a duty arising from "the larger social policies embodied by the law of torts."  Id. (citations omitted).  Such a characterization completely overlooks that when the failure to exercise "the degree of skill equal to the undertaking" creates a foreseeable risk of physical harm to person or property, a duty arises that <u>is a positive duty arising from the law of torts</u> under <u>Sewell</u>.[24]

_____

[24] <u>Thacker v. Tyree</u>, 171 W.Va. 110, 297 S.E.2d 885 (1982), cited in the district court's opinion, JA2374-2375, neither suggests to the contrary nor in any justifies the disregard of the existence of a duty cognizable in tort.  In <u>Thacker</u>, the West Virginia Court adopted a cause of action by a purchaser of a home against the vendor, based upon a failure to disclose latent defects, essentially vitiating *caveat emptor*.  In dicta, the Court observed that in building contracts there is general recognition of an implied warranty of "fitness and workmanlike quality."  <u>Thacker</u> clearly does not suggest that there is no cause of action for negligence in tort in a case like the present one.

It is also relevant under West Virginia decisional law that the character of the damages involved in this case is plainly of the type properly recoverable in a tort case. The thoughtful analysis in Aikens v. Debow, 208 W.Va. 486, 541 S.E.2d 576 (2000), is enlightening. In that seminal decision, the West Virginia Court made clear that the *sine qua non* of the permissible recovery of damages in tort is the occurrence of physical damage or injury to the person or property of the plaintiff. Conversely, Aikens holds that where the harm or injury is economic only, and there is no physical damage to the person or property of the plaintiff, recovery may not be had in tort. Stated differently, the fundamental requirement under Aikens for a tort action is "physical damage to a proprietary interest" belonging to the plaintiff. Id. at 496, 541 S.E.2d at 587 (*quoting* Louisiana v. M/V Testbank, 752 F.2d 1019, 1021 (5th Cir. 1985)).[25] Instantly, the physical character of the harm is dramatic.

_____

[25] West Virginia law, of course, is not the least unique in this regard. Identical principles have been embraced everywhere. *See* Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134 (1927); Leadfree Enters., Inc. v. U.S. Steel Corp., 711 F.2d 805 (7th Cir. 1983); Marine Navigation Sulphur Carriers, Inc. v. Lone Star Indus., 638 F.2d 700 (4th Cir. 1981); Gen. Foods Corp. v. United States, 448 F.Supp. 111 (D. Md. 1978); Coastal Conduit & Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282 (Tex. App. 2000); Bocre Leasing Corp. v. Gen. Motors Corp., 84 N.Y.2d 685, 645 N.E.2d 1195 (1995); United Textile Workers v. Lear Siegler Seating Corp., 825 S.W.2d 83 (Tenn. Ct. App. 1990); Moore v. Pavex, Inc., 356 Pa.Super. 50, 514 A.2d 137 (1986); Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 N.W.2d 124 (Iowa 1984). Indeed, in their fundamental

Pertinent by analogy is the analysis made by the West Virginia Supreme Court of Appeals in several cases of the types of damages claims that are covered under the typical commercial liability insurance policy.  For instance, in <u>Silk v. Flat Top Construction, Inc.</u>, 192 W.Va. 522, 453 S.E.2d 356 (1994), the Court considered whether the homeowners' claim against their construction consultant arising out of deficiencies in the construction of their home fell within the coverage of the defendants' commercial liability insurance.  The Court first observed that such insurance covers tort liabilities of the insured, but "does not extend coverage for breach of contract."  <u>Id</u>. at 525, 453 S.E.2d at 359.  The Court ultimately held that since the claims against the consultants sounded on contract only, but not tort, there was no coverage under the policy.  In arriving at that conclusion, the Court squarely addressed its decision in <u>Sewell</u>, *supra.*, which recognizes the availability of a cause of action in tort for negligence.  The Court noted that in <u>Sewell</u>, "heavy rains caused flooding throughout the house which caused significant damage." <u>Silk v. Flat Top Constr., Inc.</u>, 192 W.Va. at 526, 453 S.E.2d at 360.  By contrast, in the case before it, the <u>Silk</u> Court observed that "there was no such property damage.  The damages sought by the plaintiffs relate to cost overruns and delay in

---

treatise on the law of torts, Prosser and Keeton point out that most if not all courts generally recognize "a duty to exercise reasonable care in how one acts to avoid physical harm to persons and tangible things."  <u>Prosser and Keeton on The Law of Torts</u> §92 (W. Page Keeton ed.) (5th ed. 1984).

moving into the home."  Id.  Having distinguished the tort type of recovery permissible under Sewell, the Silk Court concluded, "we find the damages claimed herein have their origin solely in contract."[26]  Id.  By contrast, in Cherrington v. Erie Insurance Property & Casualty Co., 745 S.E.2d 508 (W.Va. 2013), the Court considered whether or not there was coverage under a commercial liability insurance policy for claims asserted by the homeowners against their construction contractor for defects in the construction of a home.  The plaintiffs in Cherrington asserted claims for damages for negligence and misrepresentation based upon various defects in the completed house, including an uneven concrete floor, water infiltration through the roof and a chimney, a sagging support beam, and numerous cracks in the walls and partitions throughout the house.  The circuit court granted summary judgment in favor of the insurers, *inter alia*, because the homeowner had failed to establish "covered 'property damage' insofar as the damages she alleged in her complaint were economic losses for diminution in the value of her home or excess charges she was required to pay under the contract."  Id., 745 S.E.2d at 514.  The West Virginia Supreme Court of Appeals reversed, concluding that the

---

[26] In a very recent, interesting opinion, the Texas Supreme Court held that since under Texas law a construction contractor is subject to liability for damages in tort for negligence as well as for breach of contract for harm caused by defective construction work, such claims are covered by typical contractors' commercial liability insurance.  *See* Ewing Constr. Co. v. Amerisure Ins. Co., No. 12-0661 (Texas Supreme Court Slip Opinion filed Jan. 17, 2014).

homeowner's claims fell within the scope of coverage of the insurance policies. Observing that in order for coverage to exist, the claim "must evidence 'bodily injury' or 'property damage' that has been caused by an 'occurrence'," <u>Id</u>. at 520, meaning an "accident".  The Court observed that the homeowner had identified numerous "defects for which she seeks repair and recompense: an uneven concrete floor on the home's lower level; roof leaking that has damaged the ceiling, walls, and chimney joint; wood components that directly touch the soil; settlement that allegedly has produced a sagging support beam and numerous cracks in the home's walls and partitions; and various other items requiring repair, including systems for water diversion, roof seems, flashing, caulking, and paint."  <u>Id</u>. at 522.  On that basis, the Court held "[g]iven this extensive list of damaged items in her home resulting from the allegedly defective construction and completion work, we find that [the homeowner] has asserted a claim for 'property damage' … caused by an 'occurrence'…."  <u>Id</u>.  Needless to say, if the damages asserted in <u>Cherrington</u> constitute the basis for a claim for tort liability within the scope of coverage of the commercial liability insurance policy involved in that case, then the damages asserted in this case plainly support a cause of action in tort for negligence against the defendant contractor.

Further, in Silk, concluding that the underlying claim sounded only in contract, the West Virginia Court found helpful the analysis of this Court in City of Richmond v. Madison Management Group, Inc., 918 F.2d 438 (4th Cir. 1990). That case involved a claim for damages by the City against several parties for the cost of replacing defective pipe. In an opinion by Judge Murnaghan, the City of Richmond Court discussed several Virginia cases, including the scholarly opinion in Blake Construction Co. v. Alley, 233 Va. 31, 353 S.E.2d 724 (1987). The Blake Construction Court pointed out that the law of tort is normally concerned with the protection of "the safety of the person or property of another," Id. at 34, 353 S.E.2d at 726 (quoting Bartlett v. Recapping, Inc., 207 Va. 789, 793, 153 S.E.2d 193, 196 (1967)), while contract law is designed to protect the reasonable economic expectations of parties to a contract. The Blake Construction Court further analogized this distinction to the product liability area, in which courts have grappled with the related issue of distinguishing incidents and damages that give rise to a recovery in tort under strict liability principles, as contrasted with situations that implicate only Uniform Commercial Code warranty and contract claims. Citing the West Virginia Supreme Court of Appeals' decision in Star Furniture Co. v. Pulaski Furniture Co., 171 W.Va. 79, 297 S.E.2d 854 (1982), the Blake Construction Court observed:

> The prevailing view of these cases is that tort law provides the proper relief for personal injury or property damages resulting from a hazardous product or dangerous occurrence, while relief for loss of bargain or disappointed expectations as to the quality of the product lies in contract.

233 Va. at 35, 353 S.E.2d at 726 n.4.

Indeed, although the case involved strict liability rather than negligence, Star Furniture is also highly relevant to the issue before this Court. Star Furniture arose out of a fire in a commercial building, allegedly caused by a defect in a commercial clock. On certified questions, the West Virginia Court addressed the question of what aspects of the resulting damages were recoverable under a tort theory, as contrasted with a breach of contract or breach of warranty theory. As aptly summarized in Blake Construction, the West Virginia Court started with the proposition that "[c]ontract law has been traditionally concerned with the fulfillment of reasonable economic expectations. Tort law, on the other hand, is concerned with safety of products and the corresponding quantum of care required of a manufacturer." Star Furniture, 171 W.Va. at 83, 297 S.E.2d at 858 (quoting N. Power & Eng'g Corp. v. Caterpillar Tractor Co., 623 P.2d 324, 328 (Alaska 1981)). Accordingly, the West Virginia Court reasoned that damages involving only a failure of a product to perform as expected, or an inherent vice that merely impairs the intrinsic value or usefulness of the product itself sounds only in breach

of contract or warranty.  Conversely, "when a defective product creates a situation potentially dangerous to persons or other property, and loss occurs as a result of that danger, strict liability in tort is an appropriate theory of recovery…." Id. at 84, 297 S.E.2d at 858 (*quoting* N. Power & Eng'g. Corp., 623 P.2d at 329).  The Star Furniture Court found this dichotomy to comport with the traditional distinction between the law of tort and contract:

> This delineation between damage resulting from physical injury and that resulting from purchase of unsatisfactory products is in line with the general boundaries of tort and contract theory. Tort law traditionally has been concerned with compensating for physical injury to person or property.  Contract law has been concerned with the promises parties place upon themselves by mutual obligation.  Physical harm to the defective product belongs with tort principles; reduction in value merely because of the product flaw falls into contract law.

Id. at 84, 297 S.E.2d at 859.  On that basis, the Star Furniture Court concluded:

> In West Virginia, property damage to defective products which results from a sudden calamitous event is recoverable under a strict liability cause of action.  Damages which result merely because of a "bad bargain" are outside the scope of strict liability.

Id.

The reasoning of Star Furniture is perfectly applicable by analogy in the instant case.  The evidence in this case is overwhelming, and the district court plainly found that the failure of Lang Brothers to adhere to applicable standards of

care, skill and prudence in the construction of the fill slope caused sudden, calamitous physical damage, not only to the fill placed by Lang Brothers itself, but also to the underlying slope and terrain.[27]  There can be no doubt that such "sudden calamitous" physical injury to real property is recoverable in tort under applicable West Virginia law.

Taken together, Robertson, Sewell, Lockhart, Aiken, Silk, and Star Furniture lead ineluctably to the conclusion that under West Virginia law, where a lack of due care by a construction contractor results in reasonably foreseeable physical harm to the person or property of another, that harm is remediable in a tort action. Although decided prior to those seminal cases, that is precisely the holding of the West Virginia Court in Board of Education v. Van Buren & Firestone, Architects, Inc., 165 W.Va. 140, 267 S.E.2d 440 (1980).  There, a school board had entered into contracts with eight parties, including a contractor and engineer for the construction of a school building.  The area collapsed, because the soil could not support the construction.  The Board brought a negligence action against all

---

[27] It is interesting to note that Star Furniture was also cited by the West Virginia Court in Sewell which, of course, only involved physical injury to the work of the contractor, viz. the house.  Nonetheless, the Court found the damages to be recoverable in a tort action for negligence.  Thoughtful reflection on these authorities suggests that even if the harm in this case were limited to calamitous physical injury to the fill slope itself, but not resulting damage to the natural terrain, the damages would still be recoverable in tort under West Virginia law.

contracting parties.  The circuit court granted summary judgment.  The Supreme

Court of Appeals reversed, noting that summary judgment is sparingly granted in

negligence cases, the Court stated:

> A certain duty of care in the performance of any contract is
> implied; the appellants contend generally that while certain of
> the parties defendant performed to the letter of their limited
> contracts, facts came to their attention which would put
> reasonable men on notice that simply following specifications
> would result in disaster.  If appellants can develop facts which
> show that the contractor knew or should have known that the
> entire plan was wholly defective yet failed to inform the
> appellants and urge proper corrective measures or if it can be
> shown that the site preparation engineer should have visited the
> sight but failed to do so, and that such visits are common
> practice in the industry, there may be a factual basis for
> appellant's general allegations of negligence.

Id. at 144, 267 S.E.2d at 443.

Instantly, the plaintiff seeks damages for reasonably foreseeable, substantial,

physical harm to lots 2-7 that occurred during the massive landslide in December

of 2007.  In addition to the physical failure of the fill slope itself, that physical

property damage included severe deformation to the natural soils underlying the

fill, and the surrounding terrain, necessitating extensive reconstruction of the slope.

Clearly, the requisites for liability in tort are met.

Overlooking the foregoing pertinent authorities, the district court selected as its polestar the "gist of the action" doctrine.[28]  That method of analysis was ill conceived at the outset; the "gist of the action" rubric simply has no application to this type of case.  Properly understood, the "gist of the action" approach seeks to preclude a litigant from mislabeling as a tort claim that which is in reality a contractual claim, usually for tactical or strategic reasons, such as to overcome a lack of contractual privity, or to avoid a bar of the statute of limitations, or to take advantage of more expanded damages.  As several courts have characterized it, the "gist of the action" concept is to address "contract claims masquerading as tort claims."  Goldstein v. Elk Lighting, Inc., No. 3:12-CV-168, 2013 U.S. Dist. LEXIS 30569 (M.D. Pa. Mar. 4, 2013).  The proper effect of the doctrine is to bar recovery in tort, and relegate to the law of contracts such "contract claims disguised as tort claims."  Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568, 577 (W.Va. 2013).[29]

---

[28] Again, the issue of whether the instant claim for damages caused by the slope failure is cognizable in tort had never been raised, briefed or argued in the case. Under those circumstances, it is perhaps not surprising that pertinent authority was overlooked, and inapposite jurisprudence was viewed as talismanic.

[29] The district court actually conflated within its "Gist of the Action Doctrine" analysis several cases that do not actually apply that rubric at all.  For example, the district court cited National Steel Erection, Inc. v. J.A. Jones Construction Co., 899 F.Supp. 268 (N.D. W.Va. 1995); McClure v. Elmo Greer & Sons of Kentucky, LLC, 369 F.Supp.2d 832 (N.D. W.Va. 2005); Secure US, Inc. v. Idearc Media

Corp., No. 1:08CV190, 2008 U.S. Dist. LEXIS 104112 (N.D. W.Va. Dec. 24, 2008); and Cavcon Inc. v. Endress + Hauser, Inc., 557 F.Supp.2d 706 (S.D. W.Va. 2008). Those cases do not involve the "gist of the action" problem. Rather, the cases involve the basic question of whether the circumstances give rise to tort claims for damages under the principles discussed in Lockhart, supra., in factual settings generally involving strictly economic and commercial losses. None of these cases suggest that a claim for damages for reasonably foreseeable physical damages to property fails to give rise to tort liability for negligence under West Virginia law. The district court also cited Steel of West Virginia, Inc. v. AMI G.E., LLC, No. 3:09-0005, 2009 U.S. Dist. LEXIS 48773 (S.D. W.Va. June 10, 2009), a product liability case involving a failure of a programmable logic controller that was installed in the plaintiff's air furnace facilities. Although the Court analyzed, and ultimately dismissed negligence claims, ostensibly based on an analysis of Sewell and Lockhart, the case actually seems as though it should have been controlled by Star Furniture. In any event, it is not a "gist of the action" doctrine, nor is it at all similar to the instant case. Similarly, the district court cited Silk v. Flat Top Construction, supra., in its discussion of "Gist of the Action Doctrine". As thoroughly discussed, the Silk Court characterized the case before it as a contract case because the damages alleged were economic only, and distinguished it from Sewell in which significant physical property damage had occurred. Finally, the district court's decision expressly describes Cochran v. Appalachian Power Co., 162 W.Va. 86, 246 S.E.2d 624 (1978) as involving "[t]his so-called 'gist of the action' doctrine." JA2358-2359. In fact, Cochran is plainly not a "gist of the action" doctrine case. That case involves an entirely different problem. Cochran arose out of an action for damages brought by a commercial customer against the local electric power company for improperly terminating service. The plaintiff sought damages, inter alia, for property damage to items of equipment that were damaged or destroyed when the power was disconnected. The action was instituted more than two years after the damage occurred, but less than five years after the power was discontinued. The power company interposed as a defense that plaintiff was barred by the two year statute of limitations. Observing that the claims before it could logically be construed as either tort or contract, the Court held that it would be construed to be a claim in contract, so as to avoid the bar of the statute of limitations. Indeed, in Cochran the Court created a broad rule of general application as follows:

> A complaint that could be construed as being either in tort or on contract will be presumed to be on contract whenever the action

The preclusive effect of the "gist of the action" doctrine is virtually always applied by courts to claims involving economic loss only, and usually claims that are predicated upon fraud or misrepresentation. That application of the doctrine makes sense, for the practical reason that claims for the recovery of damages for economic loss typically are not cognizable in tort. *See,* e.g. Aikens, *supra.* All of the true "gist of the action" cases cited by the district court in its decision fall squarely into this category. *See* Gaddy Eng'g Co., *supra.*; Goldstein v. Elk Lighting, Inc., *supra.*; Star v. Rosenthal, 884 F.Supp.2d 319 (E.D. Pa. 2012); Backwater Props., LLC v. Range Res.-Appalachia, LLC, No. 1:10CV103, 2011 U.S. Dist. LEXIS 48496 (N.D. W.Va. May 5, 2011). All of these cases involve solely economic loss, and the tort claims are essentially sought to be pursued in fraud or misrepresentation, which is typical of the cases generally giving preclusive effect to the "gist of the action" doctrine. *See,* e.g. R.G. Steel Wheeling, LLC v. Health Plan of the Upper Ohio Valley Inc., No. 5:13CV7, 2013 U.S. Dist. LEXIS 131138 (N.D. W.Va. Sept. 13, 2013) (claims for damages for economic loss were barred by "gist of the action" doctrine); Vaz v. Sweet Ventures, Inc., No.

---

would be barred by the statute of limitation if construed as being in tort.

Syl. Pt. 1, Id. Plainly, the principle enunciated in Cochran is worlds away from the result the district court accomplished here.

UNN-L-004619-10, 2011 N.J.Super. Unpub. LEXIS 3189 (July 14, 2011) (damages for economic loss barred by "gist of the action" doctrine); <u>Ringo v. Southland Gaming of the U.S. V.I., Inc.</u>, No. ST-10-CV-116, 2010 V.I. LEXIS 62 (V.I. Super. Ct. Sept. 22, 2010) ("gist of the action" doctrine barred fraud and misrepresentation claims for economic loss). By contrast, when applied in cases involving physical harm, the result is invariably that the action properly sounds in tort. *See* <u>Carcaise v. Cemex, Inc.</u>, 200 Fed.Appx. 116 (3d Cir. 2006) (gist of the action was a tort claim for physical injury); <u>Reed v. Dupuis</u>, 2007 Pa.Super. 68, 980 A.2d 861 (2007) (trial court erred by dismissing a physical injury claim under the "gist of the action" doctrine); <u>Pinette v. McLaughlin</u>, No. CV030524313S, 2004 Conn. Super. LEXIS 1442 (June 1, 2004) (gist of the action for physical injury sounded in tort). Claims for damages for actual physical injury to person or property are universally recognized as properly sounding in tort to begin with anyway, and, therefore, do not engender the need to miscaption that which is truly a contract claim as a disguised tort claim. Logically, it would be the rare instance, indeed, for a court to apply the "gist of the action" doctrine to preclude recovery in tort for negligently inflicted physical injury or property damage. The West Virginia Supreme Court has never done so, and research fails to disclose that any other court has either.

Viewed from that perspective, the district court's invocation of the "gist of the action" doctrine to preclude recovery in tort in this case for sudden, calamitous physical injury to real property is inapt, and unprecedented. Lang Brothers should have been found liable in tort for negligence, and damages awarded.

## II.
### THE DISTRICT COURT ERRED IN FAILING TO FIND LANG BROTHERS LIABLE FOR BREACH OF CONTRACT AND AWARD DAMAGES FOR THE PROPERTY DAMAGE RESULTING FROM THE FAILURE OF THE FILL SLOPE.

The evidence at trial also clearly supports liability of Lang Brothers for breach of contract for damages caused by the slope failure. The district court found that under the terms of the "Contract With Independent Contractor" Lang Brothers had contracted not only to build the fill slope, but also to be responsible for "quality control measures" with respect to the work. The Court implicitly regarded Lang Brothers' duty to include the use of proper and workmanlike construction practices.[30] The court clearly found that duty to have been breached, stating succinctly that the defendant's use of poor construction practices was "the

---

[30] As stated, applicable West Virginia law plainly requires the implication in every such contract of a duty to perform the work contracted for in a good and workmanlike manner. "A certain duty of care in the performance of every contract is implied…." Bd. of Ed. v. Van Buren & Firestone, Architects, Inc., 267 S.E.2d at 441; *see also* Sewell, *supra*.

sole proximate cause of the slope failure…." JA2374 n.44.[31] Paradoxically, after having elaborately, if mistakenly, concluded that the claim sounded <u>only</u> in contract, rather than tort, the district court inexplicably failed to find Lang Brothers liable for breach of the Contract With Independent Contractor and award appropriate damages for the slope failure. That omission constitutes error.

Equally perplexing is the absence of explanation in the court's decision for the total disregard of the centerpiece of the evidentiary record at trial. The defendants' post-trial submission contains a single sentence which for the first time in the case, raises as an issue that "DRB cannot recover damages for any alleged breach" of the Contract With Independent Contractor because "DRB failed to plead the same in either the Complaint or Amended Complaint." JA2166. The district court had ordered simultaneous post-trial submissions, and the district court denied plaintiff's motion to submit a response to defendants' post-trial submission.

---

[31] In order to establish a breach of contract claim under West Virginia law, the claimant must prove: (1) the existence of a valid, enforceable contract; (2) that the plaintiff has performed under the contract, (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result. <u>Wince v. Easterbrooke Cellular Corp.</u>, 681 F.Supp.2d 688 (N.D. W.Va. 2010). The district court found that under the Contract With Independent Contractor, Lang Brothers agreed to "provide fill necessary to deliver finished buildable lots" to the plaintiff; recognized that no party disputed that the contract was "valid and enforceable as a matter of law"; and that it was 'unquestionable' that the defendants "failed to live up to its contractual obligations, and [plaintiff] suffered damages as a result." JA2368-2375.

JA2293.   Therefore, plaintiff never had an opportunity to address defendants' vacuous remark about the absence of a claim under the Contract With Independent Contractor from the Amended Complaint.  The district court may *sub silentio* have adopted defendants' view.[32]   If so, it is grievous error.   The Rules of Civil Procedure dictate that the absence of explicit reference to the Contract With Independent Contractor in the pleadings is of no consequence.  All that Federal Rule of Civil Procedure 8 requires is a "short and plain statement" sufficient to give the defendant "fair notice of what the … claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).  The Amended Complaint gave unmistakable notice that plaintiff sought damages in breach of contract and tort for the slope failure.[33]  The pleadings may not be used to cabin the claims that

---

[32] The district court made the observation that reference to the Contract With Independent Contractor "is conspicuously absent from the First Amended Complaint."  JA2373.  No significance, however, is attributed to that asserted omission, and the district court's opinion simply does not contain any explanation.

[33] The Amended Complaint expressly alleged as damages for breach of contract the following:

    a) slope failure on multiple subdivision lots upon which existing homes built by [Appellant] were occupied by third-party homeowners who purchased from [Appellant];

    b) the complete loss and razing of one such home after slope failure so impacted and damaged the home that [Appellant] repurchased the home from the third-party homeowner because of Defendants' negligence;

    c) substantial slope failure mitigation efforts and expense through reconstruction and repair of areas affected by slippage;

are properly adjudicated in a case.  The intent of the Rules is to ensure that claims be determined on their merits rather than through technicality in the pleadings.  *See* Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim"); Conley v. Gibson, 355 U.S. at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits").  Above all, "[p]leadings must be construed so as to do justice."  Fed. R. Civ. P. 8(d).[34]  In Barclay White Skanska, Inc. v. Battelle Memorial Institute, 262 Fed.Appx. 556, 560 (4th Cir. 2008), this Court thoroughly rejected an attempt to limit the claims in controversy to those expressly set forth in the complaint.

In any event, Lang Brothers' liability for the damages caused by the slope failure based upon a breach of the "Contract With Independent Contractor" was plainly "tried by consent."  Rule 15(b)(2) explicitly states:

---

JA51 ¶53; *see also* JA53-54 ¶¶62, 66.

[34] Ironically, the district court actually observed elsewhere in its decision that it is "obligated to look beyond the face of the pleadings to determine the true nature of the dispute."  JA2360 n.37.  For that reason, it would be most incongruous if the district court did fail to award damages for the breach of the Contract With Independent Contractor because that contract claim was not precisely pleaded.

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(2); *see* Commerzanstalt v. Telewide Sys., Inc., 880 F.2d 642, 646 (2d Cir. 1989) (explaining that Rule 15(b) is "mandatory, not merely permissive" (*quoting* SEC v. Rapp, 304 F.2d 786, 790 (2d Cir. 1962))). Further, the pleadings do not need to be formally amended for issues tried by consent unless "evidence is objected to at trial as not within the scope of the pleadings." Commerzanstalt, 880 F.2d at 646 (*quoting* SEC v. Rapp, 304 F.2d at 790).

The defendants expressly posited as a fact to be tried whether they were liable to the plaintiff for breach of the Contract With Independent Contractor in their submission for the Joint Pretrial Memorandum. JA305. That plainly represents "express consent." Further, virtually the entire trial involved evidence that Lang Brothers breached the "Contract With Independent Contractor" in connection with the faulty construction of the slope. Not a single objection was made to the evidence.

Forty years ago, albeit in *dicta*, this Court thoroughly addressed the import of Rule 15(b)(2) in EEOC v. General Electric Co., 532 F.2d 359 (4th Cir. 1976).

The Court observed "the established rule in the trial of civil cases" to the effect that "any issues arising out of the evidence admitted into the record without objection 'must be treated in all respects as if they had been raised in the pleadings.'" Id. at 366 (*quoting* SEC v. Rapp, 304 F.2d at 790). Further, citing the Second Circuit decision in SEC v. Rapp, *supra*, the Court adopted the view that "formal amendment is needed only when evidence is objected to at trial as not within the scope of the pleadings." EEOC, 532 F.2d at 366-7 (*quoting* SEC v. Rapp, 304 F.2d at 790. Indeed, as this Court pointed out, even at the appellate stage, "pleadings may be deemed amended to conform to the issues tried below." Id. at 367 (*quoting* Purofied Down Prods. Corp. v. Travelers Fire Ins. Co., 278 F.2d 439, 444 (2d Cir. 1960)). With explicit relevance to the precise issue involved in the instant appeal, this Court quoted with approval the comment of Professor Moore that under Rule 15(b), *inter alia*, "a plaintiff may sue on one contract and recover on another…." Id. at 367 n.16 (*quoting* 3 Moore's Federal Practice, 984-5).

The absence from the Amended Complaint of any specific reference to a breach of the Contract With Independent Contractor, as conspicuous as it may have seemed to the district court, is an insufficient ground on which to disregard that claim in the adjudication of the case. Nor is there any other basis supported by the

record.  Lang Brothers should have been found liable for damages for the slope failure in <u>both</u> contract and tort.

## CONCLUSION

The district court's findings of fact are beyond reproach.  The district court found that Lang Brothers had unequivocally contracted for precise consideration to construct a fill slope behind lots 2-7, and that that undertaking came with a duty to perform the work in a careful, workmanlike manner.  The district court found that Lang Brothers' "poor construction practices were the sole proximate cause of the slope failure…."  JA2374 n.44.[35]  The district court further found that "DRB suffered damages as a result."  JA2375.  The undisputed evidence at trial showed that plaintiff suffered out of pocket losses proximately caused by the slope failure totaling $1,772,104.  Yet, under the district court's decision, no liability attached.  That result borders on a gross miscarriage of justice.  The determination cannot

---

[35] In its entirety, the Court's footnote 44 reads as follows:

> The experts all agreed that LBI did not employ the standard construction practices that, if applied in the first instance, would have ensured the slope's stability.  LBI did not install a keyway, employ benching, properly compact the fill, or install an appropriate drainage system.  (Trial Tr. 326, 371:6).  It simply did not take any reasonable measures to ensure the stability of the slope.  The credible evidence further establishes that, but for LBI's shoddy construction practices, the landslide behind Lots 2-7 would not have occurred.  In short, after a careful evaluation of the evidence of record, the Court concludes that LBI's poor construction practices were the sole proximate cause of the slope failure on Lots 2 through 7.

stand.   Plaintiff is entitled by the evidence to a judgment in the amount of $1,772,104 on <u>both</u> its tort claim for negligence, <u>and</u> its breach of contract claim.

In any event, this Court must reverse the judgment of the district court.

## <u>REQUEST FOR ORAL ARGUMENT</u>

The appellant respectfully requests oral argument of this matter because the appeal addresses important issues and the Court's decisional process would be significantly aided by oral argument.

Respectfully submitted,

By:   __/s/ Avrum Levicoff_____
        Avrum Levicoff, Esquire
        ALevicoff@LSandD.net
        W.Va. I.D. #:  4549
        Julie A. Brennan, Esquire
        JBrennan@LSandD.net
        W.Va. I.D. #:  11225
        Levicoff, Silko & Deemer, P.C.
        Centre City Tower, Suite 1900
        650 Smithfield Street
        Pittsburgh, PA  15222-3911
        412-434-5200

        *Counsel for the Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-2234        Dan Ryan Builders, Inc. v. Crystal Ridge Development, Inc.

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- This brief contains 13,649 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

- This brief has been prepared in proportionally spaced typeface using Microsoft Word 2013 in 14pt. Times New Roman type style.

Respectfully submitted:

By:    __/s/ Avrum Levicoff____
                Avrum Levicoff, Esquire

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-2234        Dan Ryan Builders, Inc. v. Crystal Ridge Development, Inc.

## CERTIFICATE OF SERVICE

I certify that on January 29, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

| | |
|---|---|
| Tiffany R. Durst, Esquire | Frank E. Simmerman, Jr., Esquire |
| tdurst@pffwv.com | fes@simmermanlaw.com |
| Nathaniel Griffith, Esquire | Chad L. Taylor, Esquire |
| ngriffith@pffwv.com | clt@simmermanlaw.com |
| Pullin Fowler Flanagan Brown & Poe, PLLC | Simmerman Law Office, PLLC |
| 2414 Cranberry Square | 254 East Main Street |
| Morgantown, WV 26508 | Clarksburg, WV  26301 |
| | |
| *Counsel for Crystal Ridge Development, Inc., Lang Brothers, Inc. and Robert S. Lang* | *Counsel for Hornor Brothers Engineers* |

Respectfully submitted:

By:    __/s/ Avrum Levicoff____
        Avrum Levicoff, Esquire

{L0562690.1 }

55